IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

JOSUE DOMINGO BARAHONA-PINEDA,
Petitioner,

v. Civil No. 3:26cv617 (DJN)

ROBERT GUADIAN, *et al.*,
Respondents.

**MEMORANDUM OPINION**

Petitioner, a federal detainee proceeding *pro se*, filed a petition for a writ of habeas corpus under 28 U.S.C. § 2241 ("§ 2241 Petition," ECF No. 6). In his § 2241 Petition, Petitioner complained that he "is detained under 8 U.S.C. § 1226(a), not 8 U.S.C. § 1231," (*id.* at 6) and "[e]ven if [he] is detained pursuant to § 1231, the removal period associated with [the] underlying removal order expired long ago and cannot serve as a basis for continued detention." (*Id.* at 7.) Petitioner sought "release from ICE custody or, in the alternative, . . . a fair bond hearing." (*Id.* at 8.) Accordingly, by Memorandum Order entered on July 21, 2026, the Court directed the Government to file either a Notice indicating that the factual and legal issues presented in the § 2241 Petition do not differ in any material fashion from those presented in *Ortega Miranda v. Bondi*, No. 3:25CV769, 2026 WL 287179 (E.D. Va. Feb. 3, 2026), or an explanation as to why material factual or legal differences between *Ortega Miranda* and the § 2241 Petition exist. (ECF No. 8 at 1–2.) The Government has filed an Opposition. (ECF No. 9.) Petitioner filed a Reply in Support of Petition for Writ of Habeas Corpus. (ECF No. 10 ("Reply").) Respondents filed a Notice of Development. (ECF No. 11.) For the reasons that follow, the § 2241 Petition will be DENIED.

## I. FACTUAL BACKGROUND

The § 2241 Petition contains very little background information. Accordingly, the Court must rely on the factual background provided by Respondents. According to Respondents:

> 5. Petitioner is a 35-year-old native and citizen of Honduras.
>
> 6. On May 14, 2011, Customs and Border Protection ("CBP") encountered Petitioner at or near Laredo, Texas. After a brief interview, CBP agents determined Petitioner had unlawfully entered the United States from Mexico without being admitted or paroled by an immigration officer. Petitioner was processed for Expedited Removal pursuant to 8 U.S.C. § 1225(b)(1) and did not claim fear of return to Honduras.
>
> 7. On June 10, 2011, Petitioner was removed from the United States to Honduras.
>
> 8. On October 10, 2022, [CBP] encountered Petitioner at or near Port Lavaca, Texas. After a brief interview, CBP agents determined Petitioner had unlawfully entered the United States from Mexico without being admitted or paroled by an immigration officer. [Enforcement and Removal Operations ("ERO")] identified that Petitioner is subject to a final order of removal. Petitioner was served a Form I-871, Reinstatement of Prior Order. Petitioner did not claim fear of removal to Honduras.
>
> 9. On October 28, 2022, Petitioner was removed from the United States to Honduras.
>
> 10. On May 23, 2026, ERO encountered Petitioner at or near Salisbury, Maryland. After confirming Petitioner's identity and immigration history, ERO took Petitioner into civil immigration custody. ERO identified that Petitioner is subject to a final order of removal. Petitioner was served a Form I-871, Reinstatement of Prior Order. Petitioner claimed fear of removal to Honduras.
>
> 11. On July 15, 2026, ERO referred Petitioner for a reasonable fear interview before the U.S. Citizenship and Immigration Services ("USCIS"). . . .

(ECF No. 9-1 ¶¶ 5–11.) On August 11, 2026, an immigration judge took testimony and concurred with the Department of Homeland Security's determination that Petitioner's fear of returning to his home country was not credible. (ECF No. 11-1 at 1.) "Pursuant to 8 C.F.R. § 1208.31(g)(1), no administrative appeal is available." (*Id.*)

## II. STANDARD OF REVIEW

28 U.S.C. § 2241(a) provides that "[w]rits of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their

respective jurisdictions." *Id.* "A federal court may grant habeas relief only on the ground that the petitioner is in custody in violation of the Constitution or laws or treaties of the United States." *Torrence v. Lewis*, 60 F.4th 209, 213 (4th Cir. 2023) (internal citations and brackets omitted); *see also Zadvydas v. Davis*, 533 U.S. 678, 687 (2001). After receiving the petition and any response thereto, "[t]he court shall summarily hear and determine the facts, and dispose of the matter as law and justice require." 28 U.S.C. § 2243.

## III. ANALYSIS

### A. Petitioner is Not Entitled to a Bond Hearing

On July 16, 2026, Petitioner filed his § 2241 Petition claiming that he was not mandatorily detained or that if he was, the removal period had long expired and his detention was unlawful. (*See* ECF No. 6 at 6–7.) For relief, he sought release or a bond hearing. (*Id.* at 8.) In his Reply, he argues that "[n]o neutral decisionmaker has determined . . . whether Petitioner presents a danger to the community, whether he presents a genuine risk of flight, or whether reasonable conditions of supervision would adequately protect the Government's interests." (ECF No. 10 at 6.)

However, it appears that Petitioner is subject to a reinstated Final Order of Removal and is now detained pursuant to 8 U.S.C. § 1231. "Under § 1231, upon the issuance of a final order of removal to an alien, the alien shall be removed 'within a period of 90 days.' 8 U.S.C. § 1231(a)(1)(A). The alien '*shall*' be detained during the removal period." *Banoub v. Crawford*, 819 F. Supp. 3d 477, 486 (E.D. Va. 2025) (footnote omitted) (quoting 8 U.S.C. § 1231(a)(1)(A)). To the extent that Petitioner argues that he is entitled to a bond hearing, that is not true. For the foreseeable future, Petitioner's detention is mandatory. *See id.* (quoting 8 U.S.C. § 1231(a)(1)(A)).

Petitioner cites *Romero v. Evans*, 280 F. Supp. 3d 835 (E.D. Va. 2017), in stating that there "the court rejected the Government's position about automatically triggered § 1231." (ECF No. 6 at 6; ECF No. 6-1 at 1–2.) In *Romero*, the court concluded that detainees subject to reinstated removal orders with pending withholding-only proceedings were "detained under § 1226(a), not § 1231, and therefore [were] entitled to individualized bond hearings." 280 F. Supp. 3d at 849. However, *Romero*'s holding was reversed by the Supreme Court, which held that "§ 1231, not § 1226, governs the detention of aliens subject to reinstated orders of removal, meaning those aliens are not entitled to a bond hearing while they pursue withholdings of removal." *Johnson v. Guzman Chavez*, 594 U.S. 523, 526 (2021). Therefore, *Romero* does not provide support for Petitioner's argument, and because Petitioner is detained pursuant to § 1231 and a reinstated order of removal, he is not entitled to a bond hearing.

**B. Prolonged Detention Under § 1231**

To the extent that Petitioner argues that his prolonged detention in ICE custody has no basis, (ECF No. 6 at 7), that argument also lacks merit.

8 U.S.C. § 1231 governs the detention and removal of aliens subject to final orders of removal.[1] Under § 1231, upon the issuance of a final order of removal to an alien, the alien shall

---

[1] 8 U.S.C. § 1231 provides, in pertinent part:

(a) Detention, release, and removal of aliens ordered removed

(1) Removal period
(A) In general
Except as otherwise provided in this section, when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days (in this section referred to as the "removal period").

. . . .

(2) Detention
(A) In general
During the removal period, the Attorney General shall detain the alien[.]

be removed "within a period of 90 days." 8 U.S.C. § 1231(a)(1)(A). The alien "*shall*" be detained during the removal period. *Id.* § 1231(a)(2)(A) (emphasis added).

An alien not removed during the removal period may be released or detained. Under 8 U.S.C. § 1231(a)(3), aliens who do not leave the United States or are not removed during the removal period "*shall* be subject to supervision" pending their removal. 8 U.S.C. § 1231(a)(3) (emphasis added). But § 1231(a)(6) provides that certain noncitizens, including those "determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period." 8 U.S.C. § 1231(a)(6).

Section 1231 "does not specify a time limit on how long DHS may detain an alien in the post-removal period." *Castaneda v. Perry*, 95 F.4th 750, 755–56 (4th Cir. 2024). But the United States Supreme Court addressed this issue in *Zadvydas v. Davis*, 533 U.S. 678 (2001). In *Zadvydas*, the Supreme Court considered whether § 1231(a)(6) authorizes the indefinite detention of an alien subject to a removal order, or whether the statute permits detention only for a period reasonably necessary to secure the alien's removal. *Zadvydas*, 533 U.S. at 692. Recognizing the "serious constitutional problem arising out of a statute that . . . permits an indefinite, perhaps permanent, deprivation of human liberty," *id.*, the *Zadvydas* Court "construe[d] [§ 1231] to contain an implicit 'reasonable time' limitation," *id.* at 682. This period, the Supreme Court determined, is presumptively six months. *Id.* at 701.

The six-month presumption "does not mean that every alien not removed must be released after six months." *Id.* But if an alien is detained beyond six months, the reasonable time presumption no longer exists. At that point, "if 'the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing' or release the alien."

*Castaneda*, 95 F.4th at 756 (quoting *Zadvydas*, 533 U.S. at 701); *see also Wan v. Crawford*, No. 1:13-cv-1473 (JCC), 2014 WL 970180, at *3 (E.D. Va. Mar. 12, 2014) (explaining the burden-shifting test established in *Zadvydas* to assess the constitutionality of detention following the presumptively reasonable six-month period).

In his Reply, Petitioner complains that:

> Petitioner was removed under the 2011 order [of removal,] that the statutory removal period connected to that order expired long ago, that Petitioner thereafter remained outside ICE custody, and the Respondents now seek to treat his May 2026 arrest as though it erased the prior statutory history and created an entirely new six-month[] period of detention without any neutral custody determination.

(ECF No. 10 at 3.) Petitioner argues that "[n]o neutral decisionmaker has determined whether renewed custody was statutor[il]y authorized . . . ." (*Id.* at 6.)

Petitioner is currently detained pursuant to the second reinstatement of the 2011 Order of Removal. Congress allowed for the reinstatement of prior orders of removal as follows:

> If the Attorney General finds that an alien has reentered the United States illegally after having been removed . . . under an order of removal, the prior order of removal is reinstated from its original date and *is not subject to being reopened or reviewed*, the alien is not eligible and may not apply for any relief under this chapter, and the alien shall be removed under the prior order at *any time* after the reentry.

8 U.S.C. § 1231(a)(5) (emphasis added). "An immigration officer simply obtains the alien's prior order of removal, confirms the alien's identity, and determines whether the alien's reentry was unauthorized." *Martinez v. Garland*, 86 F.4th 561, 564 (4th Cir. 2023) (citing 8 C.F.R. § 241.8(a)(1)–(3)), *vacated on other grounds by Martinez v. Bondi*, 145 S.Ct. 2836 (2025). After receiving written notice of the officer's determination, the alien can contest it, but if the officer "declines to reconsider his determination, he reinstates the prior removal order" and "the alien shall be removed." *Id.* (citations omitted). The alien is then removed with "no right to a hearing before an immigration judge." *Id.* at 564–65 (citation omitted). Applied to Petitioner, Petitioner

twice "reentered the United States illegally after having been removed . . . under an order of removal," the 2011 order of removal has been twice "reinstated from its original date and is not subject to being reopened or reviewed, and Petitioner "shall be removed under the prior order at any time after the reentry." 8 U.S.C. § 1231(a)(5). Therefore, Petitioner is not entitled to "any neutral custody determination" as he suggests. (ECF No. 10 at 3.)

Petitioner also challenges the removal period under the reinstated order of removal. (ECF No. 10 at 3–7.) Petitioner argues that "[t]he statutory framework established by Congress does not permit perpetual detention authority based upon a decades-old removal order." (ECF No. 6-1 at 2.) Citing *Portela-Hernandez v. Trump*, No. 25-1633-BAH, 2026 WL 74042, at *5 (D. Md. Jan. 9, 2025), Petitioner asserts that detention is mandatory only during the ninety-day removal period and "after expiration of the removal period, Congress directed that the noncitizen 'shall be subject to supervision.'" (ECF No. 6-1 at 2–3.) Petitioner argues that "[t]he statutory framework therefore does not treat each later arrest as automatically erasing the completed removal period and restarting the entire detention scheme without further process." (ECF No. 10 at 4.) Petitioner is incorrect.

"[C]ourts have generally treated the reinstated removal order as a new removal order for purposes of calculation of the removal period under 8 U.S.C. § 1231(a)(1)(B)." *Garcia Uranga v. Barr*, No. 20-3162-JWL, 2020 WL 4334999, at *5 (D. Kan. July 28, 2020). This means that "[o]nce the reinstatement determination becomes final, the 90-day period for removal commences." *See id.* (quoting *Morales v. Sessions*, No. CV 17-225-DLB-HAI, 2018 WL 3732670, at *4 (E.D. Ky. Aug. 6, 2018); *see also Rodriguez-Carabantes v. Chertoff*, No. C06-1517Z, 2007 WL 1268500, at *2 (W.D. Wash. May 1, 2007) ("The removal period for reinstated removal orders is triggered by the events listed in INA § 241(a)(1)."); *Vanegas v. Smith*, 179 F.

Supp. 2d 1205, 1208 (D. Or. 2001) ("[T]he reinstated order of deportation is administratively final, which triggers the beginning of the 'removal period.'")). Therefore, the presumptively reasonable removal period for Petitioner's detention under the reinstated removal order is six months.

Petitioner also relies on *Vardan K. v. Warden of the California City Detention Center*, No. 1:26-cv-1128-TLN-CSK, 2026 WL 730983 (E.D. Cal. Mar. 16, 2026), to assert that he should be released on supervision. (ECF No. 10 at 4–5.) However, *Vardan K.* is factually distinguishable. That case involved a detainee who was ordered removed, was released from immigration custody on supervision, checked in with ICE every year for twenty-six years, and was re-detained in 2025 at his annual check-in. 2026 WL 730983, at *1, *5.[2] Unlike Petitioner, the detainee there was subject to supervision under § 1231(a)(3) and the court concluded that ICE could not re-detain him under § 1231(a)(6). *Id.* at *3. In addition, the detainee there had never been removed from the United States. Here, Petitioner has not been released on

---

2 Petitioner also relies on *Reyes v. LaRose*, No. 25-cv-2959 JLS (JLB), 2025 WL 3204733 (S.D. Cal. Nov. 17, 2025), and *Santamaria Orellana v. Baker*, No. 25-1788-TDC, 2025 WL 2841886 (D. Md. Oct. 7, 2025). (ECF No. 10 at 5.) In *Reyes*, the detainee was granted protection from removal, was released under an Order of Supervision when removal was not reasonably foreseeable, and complied with all supervisory conditions for twelve years. 2025 WL 3204733 at *1. The detainee was re-detained at the annual supervision check-in for removal to a third country (all three potential third countries rejected ICE's requests). *Id.* The court held that ICE did not follow its own regulations in revoking the Order of Supervision and, even if it had, ICE did not show a change in circumstances to show that removal had become reasonably foreseeable. *Id.* at *2–3.

In *Santamaria Orellana*, the detainee was detained on a reinstated order of removal, was found to have a reasonable fear of persecution or torture if returned to his home country, was granted bond, and was released. 2025 WL 2841886, at *1. Three years later, he was granted withholding of removal and was released on bond again. *Id.* He was later detained at a required check-in for removal to a third country, Mexico, which had previously removed him to his home country. *Id.* The court granted the requested preliminary injunction to prevent the detainee's removal to Mexico. *Id.* at *13.

Like *Vardan K.*, *Reyes* and *Santamaria Orellana* are factually distinguishable from the instant case and are therefore inapposite.

supervision. Petitioner was removed from the United States, reentered the United States illegally, and, as explained above, is subject to a reinstated order of removal under 8 U.S.C. § 1231(a)(5) with a presumptively reasonable six-month removal period. Petitioner has only been detained on the reinstated order of removal since May 23, 2026, which is less than three months, and far less than the presumptively reasonable six-month period. *See Zadvydas*, 533 U.S. at 701.

Additionally, Petitioner asserts that there is not significant likelihood of removal in the reasonably foreseeable future. (*See* ECF No. 10 at 7–9). Good reason to believe that there is no significant likelihood of removal, as demonstrated by a detainee, is considered *after* the presumptively reasonable six-month period has elapsed. *Zadvydas*, 533 U.S. at 701. In the cases cited by Petitioner, the petitioners had been detained for ten months and twenty-four months, respectively, when the courts considered whether the petitioners had shown that there was not significant likelihood of removal in the reasonably foreseeable future. (ECF No. 10 at 8 (citing *William v. Chestnut*, No. 1:26cv4118-DAD-CSK (HC), 2026 WL 1622926 (E.D. Cal. June 5, 2026); *Chicas v. Bondi*, No. C26-451-RSM, 2026 WL 775635 (W.D. Wash. Mar. 19, 2026).) Here, the Court will not consider Petitioner's assertions concerning the foreseeability of removal until after the six-month removal period has elapsed.[3]

Because Petitioner has not met his burden to show that his ongoing detention violates the Constitution, the § 2241 Petition (ECF No. 6) will be DENIED.

---

[3] The Court notes that at the time the § 2241 Petition was filed, Petitioner was waiting for a reasonable fear interview to be conducted by USCIS. (*See* ECF No. 9-1 ¶¶ 11–12.) Now, the reasonable fear interview has occurred and an immigration judge took testimony and concurred with the Department of Homeland Security's determination that Petitioner's fear of returning to his home country was not credible. (ECF No. 11-1 at 1.) An administrative appeal is not available. Respondents assert that "upon the conclusion of this habeas proceeding or the vacatur of the no movement order, Respondents should be able to promptly effectuate Petitioner's final order of removal to his native Honduras." (ECF No. 11 at 1.)

## IV. CONCLUSION

The § 2241 Petition (ECF No. 6) will be DENIED. The Court will VACATE the portion of the Memorandum Order entered on July 21, 2026, which prohibited Respondents from removing or transferring Petitioner from this District.

An appropriate Final Order will accompany this Memorandum Opinion.

Let the Clerk file a copy of the Memorandum Opinion electronically and send a copy to Petitioner.

/s/
David J. Novak
United States District Judge

Richmond, Virginia
Dated: August 18, 2026